# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIAZHOU CHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>YUNJI INC., SHANGLUE XIAO, CHEN CHEN, HUAN HAO, QINGRONG KONG, YANHUA SUN, WEI YING, MORGAN STANLEY & CO., CREDIT SUISSE SECURITIES (USA) LLC, J.P. MORGAN SECURITIES LLC, CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED, and TOP CAPITAL PARTNERS LIMITED,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jiazhou Chen ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Yunji Inc. ("Yunji" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Yunji; and (c) review of other publicly available information concerning Yunji.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Yunji American Depositary Shares ("ADSs" or "shares") pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's May 2019 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants, under the Securities Act of 1933 (the "Securities Act").

2. Yunji operates a social e-commerce platform in China based on a membership-based model. It purports to offer high-quality products at attractive prices and incentivizes its members to promote the platform with their social contacts.

3. On May 3, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 11,217,447 shares at a price of $11.00 per share. The Company received proceeds of approximately $108.97 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to enhance and expand its business operations, to enhance its technological capabilities, to improve fulfillment facilities, and for general corporate purposes.

4. On August 22, 2019, the Company disclosed a supply chain restructuring that shifted part of its merchandise sales to its marketplace platform, resulting in a year-over-year decrease in total revenues for second quarter 2019.

5. On this news, the Company's share price fell $1.21, nearly 11%, to close at $9.39 per share on August 22, 2019, on unusually heavy trading volume. The share price continued to decline by $3.34, or over 35%, over the next three consecutive trading sessions to close at $6.05 per share on August 27, 2019, on unusually heavy trading volume.

6. By the commencement of this action, Yunji stock was trading as low as $4.40 per share, a nearly 60% decline from the $11 per share IPO price.

7. The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that the Company was shifting certain of its sales to its marketplace platform; (2) that this supply chain restructuring was likely to disrupt Yunji's relationships with suppliers; (3) that this supply chain restructuring was likely to have an adverse impact on the Company's financial results; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b). The Company's shares are traded in New York City.

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13. Plaintiff Jiazhou Chen, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Yunji ADSs pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Yunji is incorporated under the laws of the Cayman Islands with its principal executive offices located in China. Yunji's ADSs trade on the NASDAQ under the symbol "YJ."

15. Defendant Shanglue Xiao ("Xiao") was, at all relevant times, the Chief Executive Officer and Chairman of the Board of Directors of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Chen Chen ("Chen") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Huan Hao ("Hao") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendant Qingrong Kong ("Kong") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant Yanhua Sun ("Sun") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendant Wei Ying ("Ying") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21. Defendants Xiao, Chen, Hao, Kong, Sun, and Ying are collectively referred to hereinafter as the "Individual Defendants."

22. Defendant Morgan Stanley & Co. ("Morgan Stanley") served as an underwriter for the Company's IPO.

23. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the Company's IPO.

24. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO.

25. Defendant China International Capital Corporation Hong Kong Securities Limited ("China International") served as an underwriter for the Company's IPO.

26. Defendant Top Capital Partners Limited ("Top Capital") served as an underwriter for the Company's IPO.

27. Defendants Morgan Stanley, Credit Suisse, J.P. Morgan, China International, and Top Capital are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Yunji securities issued in connection with the Company's IPO.

Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

29. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Yunji's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Yunji shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Yunji or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Yunji; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

34.     Yunji operates a social e-commerce platform in China based on a membership-based model. It purports to offer high-quality products at attractive prices and incentivizes its members to promote the platform with their social contacts.

### The Company's False and/or Misleading Registration Statement and Prospectus

35.     On April 30, 2019, the Company filed its final amendment to the Registration Statement with the SEC on F-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on May 2, 2019.

36.     On May 3, 2019, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 11,217,447 shares at a price of $11.00 per share. The Company received proceeds of approximately $108.97

million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to enhance and expand its business operations, to enhance its technological capabilities, to improve fulfillment facilities, and for general corporate purposes.

37. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

38. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

39. The Registration Statement touted Yunji's supply chain management as a factor leading to the Company's organic growth, stating in relevant part:

> We offer high-quality products at attractive prices and incentivize our members to promote our platform and share our products with their social contacts. ***We believe this, together with careful product curation, centralized merchandize sourcing and efficient supply chain management, has allowed us to grow organically and made us a trustworthy e-commerce platform providing superior customer experience.***
>
> * * *
>
> Our technology infrastructure enables us to accurately process and fulfill increasingly large numbers of orders at peak periods while maintaining processing speed and quality consistency, as well as powering full supply chain visibility and control. For example, we have adopted a micro-service architecture that is built on top of our technology infrastructure to support horizontal scaling at all times. ***We have also designed a complex transaction processing system and supply chain management system which can support the continued growth in our business***.

(Emphases added.)

40. It also acknowledged that supply chain management is a "key success factor[] of social e-commerce platforms, according to CIC [China Insights Consultancy]":

*Reliable and flexible supply chain with customer-to-manufacturer (C2M) capability and strong manufacturing partner network.* Platforms equipped with reliable and flexible supply chain as well as customer-to-manufacturer (C2M) capabilities are more likely to better understand the customers' needs and coordinate more effectively with the suppliers on marketing, inventory management, etc., so as to improve operating efficiency and provide products and services that are more tailored to customers' demands.

41. Similarly, the Registration Statement stated, under "Key Factors Affecting Our Results of Operations," in relevant part:

**Our ability to manage product offerings and supply chain**

Our results of operations are also affected by whether we can successfully implement our product selection strategy and manage our product offerings. We offer broad coverage of product categories to cater to the various daily needs of our users and their households, but provide carefully curated items within each category to meet the preferences of our users. In December 2018, we offered an average of 6,613 SPUs on our platform on a daily basis, including products of mainstream brands, emerging brands and our own brands. While we will continue to work with reputable brand owners with good track records, we intend to broaden and deepen our cooperation with high-quality manufacturing partners to increase our offering of private label products. We review and continually monitor the performance of each SPU and supplier, and carefully manage the mix of products we offer, based on a number of metrics such as the preferences of users, revenue contribution and margin.

We make continual efforts to maintain and improve an efficient cost structure and create incentives for our suppliers to provide us with competitive prices. As our business further grows in scale, we strive to obtain more favorable terms from suppliers, including pricing terms and volume-based rebates. In addition, we aim to create value for our suppliers by providing an effective channel for selling large volumes of their products online and by offering them comprehensive information on customer preferences and market demand and ensuring the high quality of fulfillment services. We believe this value proposition also helps us obtain favorable terms from suppliers.

42. Moreover, the Registration Statement claimed that Yunji "will continue to dedicate significant resources to research and development efforts, . . . further enhancing our supply chain management capabilities and increasing our operational efficiency."

43. The Registration Statement purported to warn of potential risks that, "***if***" they were to occur, "***could***" or "***may***" adversely affect the Company, while failing to disclose that

these very "risks" had already begun to materialize before the IPO. For example, regarding relationships with suppliers, the Registration Statement stated:

> ***If we fail to manage and expand our relationships with suppliers, or otherwise fail to procure products at favorable terms, our business, growth and profitability prospects may suffer.***
>
> We source products from third-party suppliers for our online platform. We had 1,369 suppliers as of December 31, 2018. Our suppliers include merchants of mainstream brands and emerging brands, and manufacturing partners we cooperate with. Maintaining strong relationships with these suppliers is important to the growth of our business. In particular, we depend significantly on our ability to procure products from suppliers on favorable pricing terms. We typically enter into one-year framework agreements with our suppliers on an annual basis, and these framework agreements do not ensure the availability of products or the continuation of particular pricing practices or payment terms beyond the end of the contractual term. In addition, our agreements with suppliers typically do not restrict the suppliers from selling products to others. We cannot assure you that our current suppliers will continue to sell products to us on commercially acceptable terms, or at all, after the term of the current agreement expires. Even if we maintain good relations with our suppliers, their ability to supply products to us in sufficient quantity and at competitive prices may be adversely affected by economic conditions, labor actions, regulatory or legal decisions, natural disasters or other causes.
>
> In the event that we are not able to purchase products at favorable prices, our revenues and cost of sales may be materially and adversely affected. In the event any brand owner does not have authority from the relevant manufacturer to sell certain products to us, such brand owner may cease selling such products to us at any time. If our suppliers cease to provide us with favorable payment terms, our need for working capital may increase and our operations may be materially and adversely affected. We will also need to establish new supplier relationships to ensure that we have access to a steady supply of products on favorable commercial terms. If we are unable to develop and maintain good relationships with suppliers that would allow us to obtain a sufficient amount and variety of authentic and quality products on acceptable commercial terms, it may inhibit our ability to offer sufficient products sought by our users, or to offer these products at competitive prices. Any adverse developments in our relationships with suppliers could materially and adversely affect our business and growth prospects. In addition, as part of our growth strategy, we plan to further expand our product offerings. If we fail to attract new suppliers to sell their products to us due to any reason, our business, growth and profitability prospects may be materially and adversely affected.

44. The Registration Statement was materially false and misleading and omitted to state: (1) that the Company was shifting certain of its sales to its marketplace platform; (2) that this supply chain restructuring was likely to disrupt Yunji's relationships with suppliers; (3) that this supply chain restructuring was likely to have an adverse impact on the Company's financial results; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**The Subsequent Disclosures**

45. On August 22, 2019, the Company disclosed that supply chain restructuring negatively impacted Yunji's financial results for second quarter 2019, the same quarter in which the IPO was conducted. Yunji's press release announcing second quarter 2019 financial results stated, in relevant part:

- Total revenues in the second quarter of 2019 was RMB3,064.1 million (US$446.3 million), compared with RMB3,255.6 million in the same period of 2018, *primarily due to a decrease in revenues from sales of merchandise, which recognizes revenues on a gross basis, as the Company shifted part of merchandise sales to its marketplace platform, which recognizes revenues on a net basis*.

\* \* \*

"We maintained a healthy growth rate in the second quarter, as we continued to optimize and upgrade our new marketplace business model. *We also adjusted our supplier agreements to improve our value proposition to members. As we continued to carefully select new brands and curate quality products* at attractive prices that best match member demand, our membership base further expanded during the second quarter. We are confident that our operational progress and membership expansion will help drive our future growth," said Mr. Shanglue Xiao, Chairman and Chief Executive Officer of Yunji.

(Emphasis added.)

46. On this news, the Company's share price fell $1.21, nearly 11%, to close at $9.39 per share on August 22, 2019, on unusually heavy trading volume. The share price continued to

decline by $3.34, or over 35%, over the next three consecutive trading sessions to close at $6.05 per share on August 27, 2019, on unusually heavy trading volume.

47. By the commencement of this action, Yunji stock was trading as low as $4.40 per share, a nearly 60% decline from the $11 per share IPO price.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act
### (Against All Defendants)

48. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

49. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

50. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

51. Yunji is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

52. As issuer of the shares, Yunji is strictly liable to Plaintiff and the Class for the misstatements and omissions.

53. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

54. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

55. Plaintiff acquired Yunji shares pursuant and/or traceable to the Registration Statement for the IPO.

56. Plaintiff and the Class have sustained damages. The value of Yunji shares has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

57. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

58. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

59. The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Yunji within the meaning of Section 15 of the Securities Act. The Individual Defendants had the power and influence and exercised the same to cause Yunji to engage in the acts described herein.

60. The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

61. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b. Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 12, 2019      **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: lportnoy@glancylaw.com

-and-

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: info@glancylaw.com

*Attorneys for Plaintiff Jiazhou Chen*